[No. 8268.   Department One.   October 22, 1909.]

A. J. BURROWS, *Respondent*, v. W. W. SEYMOUR, *Appellant.*[1]

BROKERS—COMMISSIONS—AGREEMENT TO PAY—EVIDENCE—SUFFI-
CIENCY. The verdict of a jury, for $1,000 for an agreed broker's
commission, on the sale of a gas plant, should be set aside for want
of any substantial evidence to justify it, where, in answer to spe-
cial interrogatories, the jury found that the plaintiff represented
that he had, and that he did have, an unexpired option to control
the majority of the stock of the gas company, in consideration of
which the defendant promised to pay the commission, and plaintiff
testified that he could not swear that he had an option and was
merely confident that there was an option, from statements made by
his partner, and the other evidence conclusively showed that he
never had any option. ·

Appeal from a judgment of the superior court for Pierce
county, Clifford, J., entered June 8, 1909, upon the verdict
of a jury rendered in favor of the plaintiff, in an action on
contract.   Reversed.

*Frank D. Nash*, for appellant.   ·
*Marshall K. Snell* and *Bertha M. Snell*, for respondent. .

MORRIS, J.—The complaint herein sets forth two causes of
action.   The first sought a recovery in the sum of $1,000, as
the reasonable value of services rendered appellant in his
purchase of the Grays Harbor Gas Company. . The second
was based upon an alleged contract for the payment of
$1,000, growing out of the following letters:

"Aberdeen, Wash. 6, 20, 06.
"Mr. W. W. Seymour,
      "Tacoma, Wash.
"My dear Sir:   Confirming telephone messages to you
this date, I beg to advise you that I have decided to allow
you to take up the matter of the purchase of the Grays Har-
bor Gas Co. direct with the principals, with the understand-
ing that in the event of a sale, I am to receive from you a

[1]Reported in 104 Pac. 511.

commission of $1,000, to be paid upon completion of the transaction. This, I think, is in conformity with our conversation of last Saturday. My recollection of our conversation is that you agreed to pay me this commission in the event you buy regardless of the price paid. Kindly advise me if this is correct. You understand, of course, that I reserve the right to sell to other parties, with whom I have been negotiating. I am afraid that it will be useless for you to try to secure a lower price, as I believe that I could get as low a price as could be had. It will do no harm to try, although I expect to sell the plant at the price named unless you succeed in closing the deal before my parties are ready. Wishing you success I beg to remain, ·

"Yours very truly, A. J. Burrows.

"June 22, 1906.

"Mr. A. J. Burrows,
    "Aberdeen, Wash.

"My dear Mr. Burrows: I acknowledge receipt of your letter of June 20th. You are correct in saying that your commission is to be $1,000, upon the completion of the transaction. I realize that you reserve the right to sell to other parties, but in case we get so far along as to get near a trade I would expect to have you give me an exclusive option. Will not ask it unless we are pretty near a trade. I expect to leave the city Monday and you might telegraph me or 'phone me upon receipt of this letter.

"Yours very truly,  W. W. Seymour."

The complaint alleges that respondent furnished the names and addresses of the stockholders, and withdrew from any further connection with the sale, and that appellant, after taking the matter up with the individual stockholders, purchased the gas plant in March, 1907.

Appellant, answering, admits he received some information from respondent, but says such information was incorrect and misleading, and was not relied upon by him in making his purchase; that before he made such purchase, the dealings and transactions between appellant and respondent had fully ceased, and his negotiations as to the purchase of the plant were carried on with persons not made known to him by

respondent.  He further says that he was induced to enter into negotiations with respondent upon representations that respondent had an option on the gas plant and could sell the same for $60,000 or $65,000; that such option would soon expire, and appellant must act quickly as other parties were then negotiating for the purchase of the plant; that he would not have entered into any agreement with respondent except for such representations, and that the same were not true.

The reply denied these affirmative allegations, and upon the trial the jury returned a verdict for respondent for $1,000.  Certain special interrogatories were answered by the jury, to the effect that respondent represented that he had an option to control the majority of the stock; that he did have such option; that it had not expired at the time of appellant's purchase; that appellant purchased the stock of the gas company under the agreement he made with respondent, and that appellant did not abandon nor terminate his efforts to purchase the stock, under his negotiations with respondent.  The court below withdrew the first cause of action from the consideration of the jury, during its instructions, and the verdict is based upon the second cause of action.

The error assigned here is insufficiency of the evidence to justify the verdict, appellant contending that there is no evidence to justify either the general or special verdicts.  The weight of the evidence, and the existence or nonexistence of facts are ordinarily questions for the jury, it being the sole judge of the facts; so that, where there is substantial evidence to justify the verdict, its weight is for the jury, and its verdict will not be disturbed.  But when the record discloses an entire lack of evidence to justify the verdict, it is equally the duty of the court to set the verdict aside.  Although respondent in his reply denies the consideration of the agreement to pay him $1,000 was his representation that he had an option upon the stock of the Grays Harbor Gas

Company, it is apparent that respondent was not promising to pay appellant $1,000 for the privilege of purchasing this stock. There must have been something of value he expected to obtain for his payment of $1,000, and that something must have been respondent's representations that he was authorized to find a purchaser for this gas plant, and, when so found, had authority from the stockholders, or a controlling majority thereof, to effect a sale. This is found to be the fact by the first special verdict of the jury, in which it is found that respondent represented that he had an option to control the majority of the stock at the time of the agreement. Does the evidence then disclose any such option, or any authority on respondent's part to find the gas company in a sale?

A careful reading of all the evidence convinces us that he had no such option, nor any authority whatever to negotiate for a sale, and this conclusion is not reached by us by usurping the province of the jury, and determining the weight of the evidence; rather it is reached by failing to find any evidence at all, however slight, to justify such a holding, the evidence being all to the contrary. On May 19, 1906, respondent writes appellant: "My option expires on next Friday the 25th inst." On May 22 he writes: "I now have until the 25th of June to handle the proposition," confirming appellant's contention that he represented he had such option. Yet not in his testimony nor in any evidence produced by him is there any proof of the existence of such an option. His own testimony is as follows:

"There is more or less difficulty—to explain that proposition, the option. I cannot positively swear as to the option. I am confident that we had an option, but the relationship between the parties in the corporation— Mr. Nash: Just one word. Who do you mean when you say 'we?' A. I am speaking of myself in connection with my father. In taking this up with my father—he is a man 82 years old, and naturally his memory is not as clear as it once was—he stated that

he was confident that he had an option covering Mr. Hill's and Mr. Wadsworth's stock in the company, but that it had been disturbed. Mr. Nash: I object to the conversation between himself and father. The Court: Objection sustained."

This is no evidence to justify a finding that he had an option, and his father's letter, from which we will hereafter quote, shows his confidence was unfounded. Later on he again testifies:

"In connection with the option on the plant, while I have not been able to produce that option owing to the fact that it was given in my father's hands, and all of his correspondence and things of that kind were misplaced or destroyed following his breaking up in health, so that I haven't that option, I am positive of the existence of that option, however."

He later testifies that:

"Mr. Hill was the principal stockholder. Mr. Wadsworth was another one of the principals. My father was a stockholder and there was a man named Roth or Rolph. I would not say what the name is. I suppose fifteen or twenty local holders of from one to four shares."

Later he says, when asked if he had an option on Mr. Hill's stock or his father's: "I cannot say. If so, it was held through Mr. Wadsworth."

A Mr. Rogerson, acting for appellant, called on Mr. Wadsworth, in August, 1906, to ascertain if the stock could be purchased. Mr. Wadsworth's answer was that he would consider a proposition to sell at about $75,000, but that he personally did not control the company, he and Mr. Hill owning practically all the stock. From this it would appear that respondent was in error in stating that an option existed through Mr. Wadsworth. Mr. Hill testified that he never had any negotiations with respondent touching the sale of this stock; that he did not know respondent. As confirming appellant's contention that respondent never had any option or other authority to dispose of the gas plant, we find a letter from O. E. Burrows, the father of respondent, and the

one in whom respondent seemed to think this authority to sell existed. This letter is dated November 19, 1906, five months after respondent's assertion of his authority and power to dispose of this stock, and is addressed to Mr. Hill. We quote from it:

"I would have been glad to know the lowest price at which you and Mr. Wadsworth will sell your stock. I think it very probable that we can find a purchaser if the price is right."

It is evident from this letter that C. E. Burrows did not understand, as late as November, that he had any authority to negotiate a sale of this stock. The sale was consummated the following March by a Mr. Patterson, acting under a power of attorney from Hill. Much, therefore, as we regret to disturb the verdict, we are constrained to hold that there was no evidence to justify any finding that respondent had authority to sell this stock, either under an option or otherwise, and that this authority continued up to, and was the controlling factor in, the final purchase of the stock by appellant.

We have endeavored to show there was no consideration for the agreement upon which the second cause of action was predicated, and any judgment founded thereon is erroneous. The court below erred in refusing a new trial, and the judgment is reversed.

RUDKIN, C. J., FULLERTON, CHADWICK, and GOSE, JJ., concur.